DECISION
Plaintiff appeals the 2009-10 real market value of property identified as Account 55886 (subject property). A telephone trial was held on November 2, 2010. Haze Weed (Weed), manager and Oregon licensed real estate appraiser, appeared on behalf of Plaintiff. Defendant did not appear.[1]
Plaintiff's Exhibits 1 through 6 were received.
 I. STATEMENT OF FACTS
Weed, who identified herself as an Oregon certified general appraiser for more than 33 years, testified that the subject property is a vacant 6.62 acre tract with steep slide zone topography including clay soil slips. (Ptf's Ex 3-1.) She testified that her concern regarding the subject property's real market value is the property's highest and best use. Weed testified that she does not agree with Defendant that the subject property can be "developed into a subdivision" given that "in 2005 Fish and Wildlife discovered that this is a known Heron nesting ground and Fish and Wildlife will not allow building in nesting areas." (Id.) She testified that, to access the parcel, a "bridge" would need to be built over the "deep culvert." Weed testified *Page 2 
that she consulted an engineer in late 2009 who addressed the costs and difficulties associated with the installation of utilities. (See Ptf's Ex 4.)
Weed testified that "at best, one home site could be developed." She testified that "the engineers" estimate the construction cost for one home site to be "$237,712," including "total soft cost" of $46,855. (Ptf's Ex 5-6.) Weed testified that the neighboring subdivision "strongly oppose[s] development" of the subject property and she doubts that more than one building permit would be issued given the "fish and wild life" living on the subject property.
Weed testified that she prepared a "restricted use appraisal." (Ptf's Ex 5-1 to 5-5.) She testified that she identified three properties as comparable to the subject property. (Ptf's Ex 5-1.) Those three properties, varying in size from 4.71 acres to 9.36 acres, are located approximately "6 miles SE" of the subject property. (Id.) Weed testified that the three "sites all had beautiful riverfront views" and comparable sale 3 "included a shop building." (Ptf's Ex 5-1, 5-7.) Weed testified that each of the three sites is "level," has "access in [and] utilities available." (Ptf's Ex 5-7.) To the sale prices, Weed made various adjustments for "site/view[,]" topography, "utilities[,]" and "access[,]" which was described as a "shared [driveway] to site[.]" (Ptf's Ex 5-1.) When asked how she determined each adjustment amount, Weed testified that she relied on her experience, stating that the "normal view adjustment" ranges from $10,000 to $20,000, and the "utilities adjustment" was "more reasonable that the engineer's cost estimate." Even though she made no adjustment for date of sale, July 2009, to the assessment date, January 1, 2009, Weed testified that sales prices for vacant lots decreased between 2007 and 2009. (Ptf's Ex 5-1, 5-7; Ptf's Ex 2-1.) Weed's adjusted sale prices for comparable sales 1, 2, and 3 ranged from $55,000 to $115,000. (Ptf's Ex 5-1.) She concluded that the "sales indicate a real market[] value of $75,000 at the most for Tract G, Vista Ridge [subject property]." (Id.) *Page 3 
Weed testified that she included comparable sale 4 because "it sets the hopeful outside range" of the subject property's real market value. She testified that comparable sale 4 is a "24 acre proposed development located on Highway 26 with 10 proposed partitioned lots, utilities and road access." Weed determined an indicated value of $202,000. (Ptf's Ex 5-2.) She testified that because there is a "concern" whether "even one home site can be developed" on the subject property, noting the development costs, "sale [4] indicates a market value of $9,698 per acre or $64,200 for the subject property at the most." (Id.)
Weed described the subject property's "distinguishing features." She testified that the subject property "backs up to forest." Weed testified that the subject property was accepted into the forestland deferral program. She testified that she plans to thin the trees. Weed testified that the subject property does not have a river view, but there is a stream running through the subject property.
 II. ANALYSIS
The issue before the court is the 2009-10 real market value of Plaintiff's property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments."Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing Gangle v. Dept. ofRev., 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), [2] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." *Page 4 
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See ORS 308.205(2) and OAR 150-308.205-(A)(2). Because the subject property is vacant land, the income approach is not applicable. The cost approach was not discussed. The subject property was purchased more than three years prior to the assessment date. (Ptf's Ex 1-2.)
For a property such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." ChambersManagement Corp v. Lane County Assessor, TC-MD No 060354D, WL 1068455 at *3 (Apr 3, 2007) (citing Appraisal Institute, TheAppraisal of Real Estate 335 (12th ed 2001)). Weed, a certified appraiser, presented the comparable sales approach to the court. The unadjusted sale prices of the three comparable properties ranged from $90,000 to $160,000. (Ptf's Ex 5-1.) The sales occurred six months after the assessment date. (Id.) Weed did not make a time adjustment and provided no data showing that sale prices remained stable, increased or decreased between January 2009 and July 2009. Weed made adjustments for "site/view[,]" topography, "utilities[,]" and "access[.]" Those amounts were based on her prior appraisal experience but were not supported by any third party data. Additional supporting data would have persuaded the court that Weed's indicated value is correct. Without a time adjustment and additional supporting data, the court concludes that Plaintiff's indicated value, which is outside the comparable sales range, is too low.
 III. CONCLUSION
After careful consideration of Weed's experience, certification, and testimony, the court concludes that the 2009-10 subject property's real market value is $100,000. Now, therefore, *Page 5 
IT IS THE DECISION OF THIS COURT that the real market value of property identified as Account 55886 was $100,000 for tax year 2009-10.
Dated this ____ day of February 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on February 22, 2011. The Court filed and entered thisdocument on February 22, 2011.
[1] At the time scheduled for trial, the court telephoned Defendant's authorized representative who signed Defendant's Answer, appeared at the case management conference, participated in selecting the date and time of the telephone trial, and authored trial exhibits exchanged with Plaintiff. Defendant's only designated authorized representative was not available.
[2] References to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to year 2007.
 *Page 1